UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAYLOR UPTON,<br><br>        Plaintiff,<br><br>   -against-<br><br>VEREIT, INC., VEREIT OPERATING PARTNERSHIP, L.P., GLENN J. RUFRANO, HUGH R. FRATER, PRISCILLA ALMODOVAR, DAVID B. HENRY, MARY HOGAN PREUSSE, RICHARD J. LIEB, EUGENE A. PINOVER, JULIE G. RICHARDSON, and SUSAN E. SKERRITT,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Taylor Upton ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## **NATURE OF THE ACTION**

1.   This is an action brought by Plaintiff against VEREIT, Inc. ("VEREIT" or the "Company"), VEREIT's wholly owned and controlled operating partner, VEREIT Operating Partnership, L.P. ("VEREIT OP"), and the members of VEREIT's board of directors (the "Board" or the "Individual Defendants" and together with VEREIT and VEREIT OP, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of VEREIT by Realty Income Corporation ("Realty Income") through Realty Income's subsidiaries Rams MD Subsidiary I, Inc. ("Merger Sub 1") and Rams Acquisition Sub II, LLC ("Merger Sub 2") (the "Proposed Merger").

1

2.      On April 29, 2021, the parties entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which each VEREIT stockholder will be entitled to receive 0.705 shares of Realty Income common stock for each VEREIT share they own (the "Merger Consideration").   Upon closing, the companies expect to effectuate a taxable spin-off of substantially all of the office properties of both VEREIT and Realty Income into a new, self-managed, publicly traded real estate investment trust ("REIT") ("SpinCo").  Following the merger and the spin-off, Realty Income shareholders are expected to own approximately 70% and VEREIT shareholders are expected to own approximately 30% of both the combined company and SpinCo.

3.      On June 4, 2021, in order to solicit VEREIT shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement/prospectus/registration statement on Form S-4 with the SEC (as amended on June 25, 2021), in violation of Sections 14(a) and 20(a) of the Exchange Act.  On June 29, 2021, VEREIT filed with the SEC a definitive joint proxy statement/prospectus on Schedule 14A forming part of the registration statement (the "Proxy").

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for VEREIT and Realty Income, (ii) the valuation analyses performed by VEREIT's financial advisor, J.P. Morgan Securities, LLC ("J.P. Morgan"), and (b) potential conflicts of interest involving certain of the Individual Defendants.

5.      The special meeting of VEREIT shareholders to vote on the Proposed Merger will be held on August 12, 2021 (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise her corporate suffrage

rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to VEREIT's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.

Indeed, VEREIT's common stock trades on the New York Stock Exchange, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.     Plaintiff is, and at all relevant times has been, a shareholder of VEREIT.

11.     Defendant VEREIT is a Maryland corporation with its principal executive offices located at 2325 E. Camelback Road, 9th Floor, Phoenix, Arizona 85016.  VEREIT's common stock trades on the New York Stock Exchange under the ticker symbol "VER".

12.     Defendant VEREIT OP is a Delaware limited partnership with its principal executive offices located at 2325 E. Camelback Road, 9th Floor, Phoenix, Arizona 85016.  VEREIT is the sole general partner of VEREIT OP and has the full, exclusive and complete responsibility for VEREIT OP's day-to-day management and control.  VEREIT is the holder of 99.9% of the common partnership interest in VEREIT OP (the "OP Units") as of December 31, 2020.  VEREIT OP's 6.70% Series F Preferred Units are traded on the New York Stock Exchange under the ticker symbol "VER PRF".

13.     Individual Defendant Glenn J. Rufrano is, and has been at all relevant times, a director and the Chief Executive Officer of VEREIT.

14.     Individual Defendant Hugh R. Frater is, and has been at all relevant times, a director and the Non-Executive Chairman of the Board of VEREIT.

15.     Individual Defendant Priscilla Almodovar is, and has been at all relevant times, a director of VEREIT since February 2021.

16.     Individual Defendant David B. Henry is, and has been at all relevant times, a director of VEREIT.

17.     Individual Defendant Mary Hogan Preusse is, and has been at all relevant times, a director of VEREIT.

18.     Individual Defendant Richard J. Lieb is, and has been at all relevant times, a director of VEREIT.

19.     Individual Defendant Eugene A. Pinover is, and has been at all relevant times, a director of VEREIT.

20.     Individual Defendant Julie G. Richardson is, and has been at all relevant times, a director of VEREIT.

21.     Individual Defendant Susan E. Skerritt is, and has been at all relevant times, a director of VEREIT since February 2021.

22.     The Individual Defendants referred to in ¶¶ 13-21 are collectively referred to herein as the "Individual Defendants" and with VEREIT and VEREIT OP they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

23.     VEREIT is a full-service real estate operating company that owns and actively manages a diversified portfolio of retail, office and industrial real estate assets subject to long-term net leases.

24.     Realty Income, a Maryland corporation, is an S&P 500 company structured as a real estate investment trust or REIT, requiring it annually to distribute at least 90% of its taxable income (including net capital gains) in the form of dividends to its stockholders.  Realty Income was founded in 1969 and listed on the New York Stock Exchange in 1994.  It acquires and manages freestanding commercial properties that generate rental revenue under long-term lease agreements

with Realty Income's commercial clients.

25.    On April 29, 2021, VEREIT issued a press release announcing the Proposed

Merger, which states in relevant part:

### Realty Income To Merge With VEREIT® In All-Stock Transaction

SAN DIEGO and PHOENIX, April 29, 2021 /PRNewswire/ -- Realty Income Corporation (NYSE: O) ("Realty Income"), The Monthly Dividend Company ®, and VEREIT, Inc. (NYSE: VER) ("VEREIT") today announced that the two companies have entered into a definitive merger agreement by which Realty Income will acquire VEREIT in an all-stock transaction, creating a combined company with an enterprise value of approximately $50 billion. Under the terms of the agreement, VEREIT shareholders will receive 0.705 shares of Realty Income stock for every share of VEREIT stock they own.

Immediately following the closing, the companies expect to effectuate a taxable spin-off of substantially all of the office properties of both companies into a new, self-managed, publicly traded REIT ("SpinCo"). Following the merger and the spin-off, Realty Income will continue as the surviving public entity. Realty Income and former VEREIT shareholders are expected to own approximately 70% and 30%, respectively, of both Realty Income and SpinCo.

The transactions are expected to be over 10% accretive to Realty Income's AFFO per share in year one, add meaningful diversification that further enables new growth avenues, strengthen cash flow durability, and provide significant financial synergies, particularly through accretive debt refinancing opportunities. Realty Income's growth strategy will remain focused primarily on high-quality, single-tenant net lease retail and industrial properties in the U.S. and U.K., leased to clients that are leaders in their respective businesses.

"We believe the merger with VEREIT will generate immediate earnings accretion and value creation for Realty Income's shareholders while enhancing our ability to execute on our ambitious growth initiatives," said Sumit Roy, President and Chief Executive Officer of Realty Income. "Together, our company will enjoy increased size, scale, and diversification, continuing to distance Realty Income as the leader in the net lease industry. VEREIT's real estate portfolio is highly complementary to ours, which we expect to further enhance the consistency and durability of our cash flows."

"The objective of our management team from initiation in 2015 was to revitalize VEREIT and increase the value of the enterprise," said Glenn Rufrano, Chief Executive Officer of VEREIT. "We put an excellent team in place, enhanced the portfolio, created an investment-grade balance sheet and resolved all legacy issues. The board and management have concluded that a merger with Realty Income, the

premier net lease company, will enable us to recognize the value created. The combined company provides all of our constituencies the opportunity to benefit from the advantageous cost of capital and growth potential generated by this transaction."

## Strategic and Financial Rationale

- **Immediate AFFO per share accretion.** Relative to the $3.465 midpoint of Realty Income's 2021 AFFO per share guidance, the transaction is expected to be over 10% accretive to shareholders on an annualized, leverage-neutral basis.
- **Increased and diversified scale driving growth.** The complementary nature of each company's real estate portfolio results in greater diversification of client credit, industry, and geography, providing further runway for Realty Income to grow in its chosen verticals with best-in-class clients without compromising prudent concentration metrics.
- **Enhanced leadership amongst blue chip benchmarks.** Upon closing of the merger, Realty Income is expected to become one of the six largest REITs in the MSCI US REIT Index (RMZ) by equity market capitalization and among the top half of constituents in the S&P 500, resulting in increased weighting in major benchmark equity indices and further growing its net lease industry-leading trading liquidity.
- **Dividend stability.** Realty Income is one of only three REITs in the S&P 500 Dividend Aristocrats Index ® for having increased its dividend every year for the last 25 consecutive years and the improved diversification effectuated through the merger is expected to further enhance the durability of Realty Income's dividend coverage. VEREIT's shareholders are expected to experience an immediate increase in the dividend upon closing of the merger. Dividend payments for both companies are expected to remain uninterrupted through the close of this transaction.
- **Fortress balance sheet and continued credit rating leadership in the net lease industry.** Realty Income is currently the only net lease REIT with A3/A- credit ratings from Moody's and S&P and intends to maintain target leverage (as defined as Net Debt and Preferred Equity / Adjusted EBITDA *re*) in the mid-5x area. Upon closing of the merger, Realty Income's enhanced scale and diversification are expected to be credit positives.
- **Cost of capital advantages amplified.** Realty Income's cost of capital advantage is driven by its superior credit ratings in the net lease industry and historical premium to NAV, which allows it to consistently grow AFFO per share while assembling a best-in-class real estate portfolio. Post-merger, shareholders are expected to benefit from this cost of capital advantage applied towards a broader set of growth opportunities across its combined investment pipeline.
- **Attractive debt refinancing synergies.** As one of eight U.S. REITs with two credit ratings of at least A3/A- by Moody's and S&P, Realty Income is uniquely positioned to refinance VEREIT's upcoming debt maturities at materially lower rates in multiple currencies. Furthermore, Realty Income's accelerating investment activity in the U.K. further allows for significantly lower all-in borrowing costs in the high-grade unsecured bond market relative to the U.S. As of December 31,

2020, VEREIT had approximately $6 billion of outstanding debt at a weighted average interest rate of approximately 4% and a weighted average term to maturity of approximately 6 years. In addition, pro forma for previously disclosed activity in January 2021, VEREIT has approximately $373 million of outstanding preferred equity at a rate of 6.7%, which is freely prepayable at par.

• **Meaningful corporate cost synergies to further enhance scalability of platform.** On a run-rate basis, Realty Income expects to achieve estimated annualized corporate cost synergies of $45 - $55 million inclusive of stock-based compensation, and an estimated $35 - $40 million of annualized synergies on a cash basis. An estimated 75% of savings are expected to be achieved in the first 12 months post-closing. In 2020, Realty Income's G&A margin as a percentage of revenue (excluding tenant reimbursements) was approximately 4.7% and its 4Q20 annualized G&A as a percentage of gross real estate asset value was 0.32%. Both metrics were the lowest in the public net lease industry.

### Realty Income Pro Forma Metrics

After giving pro-forma effect for the closing of the merger and assuming the anticipated spin-off of the office assets, Realty Income's shareholders will own a diversified global portfolio of approximately 10,300 primarily single-tenant, net lease commercial real estate properties located in 50 U.S. states, Puerto Rico and the U.K. In addition, utilizing reported portfolio metrics for each company as of December 31, 2020:

• Total portfolio annualized contractual rent is expected to be approximately $2.5 billion

• Approximately 83%, 14% and 3% of total portfolio annualized contractual rent is expected to be generated from retail, industrial, and other property types, respectively

• Approximately 45% of total portfolio annualized contractual rent is expected to be generated from investment grade clients

• The 10 largest clients are expected to be Walgreens (5% of annualized contractual rent), Dollar General (4%), Dollar Tree/Family Dollar (4%), FedEx (3%), 7-Eleven (3%), LA Fitness, (3%), Walmart/Sam's Club (2%), CVS Pharmacy (2%), Sainsbury's (2%) and BJ's Wholesale Clubs (2%)

• The 10 largest industries are expected to be Convenience stores (9% of annualized contractual rent), Grocery stores (8%), Dollar stores (8%), Drug stores (8%), Restaurants – casual dining (7%), Restaurants – quick service (7%), Health & Fitness (5%), Home improvement (4%), Theaters (4%), and Transportation services (4%)

• Realty Income expects to maintain leverage (as defined as Net Debt and Preferred Equity / Adjusted EBITDA *re*) of approximately 5.5x, supported by a $3.0 billion unsecured revolving credit facility and $1.0 billion commercial paper program

### "SpinCo" Pro Forma Metrics

The planned spin-off of the office portfolio maintains Realty Income's preferred

portfolio mix, consistent with its focused investment strategy of acquiring high quality real estate leased primarily to retail clients that have a service, non-discretionary, and/or low-price-point component to their business, and industrial clients that are primarily investment grade rated companies and leaders in their respective industries.

Upon completion of the planned spin-off, shareholders of both companies are expected to receive a stock distribution in a separate, publicly traded REIT, subject to customary conditions. The anticipated spin-off of substantially all of the combined companies' office properties is expected to result initially in a pure-play, self-managed portfolio of 97 domestic office properties.

In addition, utilizing reported portfolio metrics for each company as of December 31, 2020 and pro forma for closed transaction activity in 2021:

• Total portfolio annualized contractual rent is expected to be approximately $183 million

• Approximately 76% of total portfolio annualized contractual rent is expected to be generated from investment grade clients

• Top five largest clients are expected to be GSA (10% of annualized contractual rent), Cigna (7%), Merrill Lynch (6%), HealthNow (4%), and RSA (4%)

• Top five largest industries are expected to be Health care (17% of annualized contractual rent), Telecommunications (14%), Insurance (13%), Financial services (11%), and Government services (11%)

• Pro forma contractual rent collected in 4Q20 was in excess of 99%

Pursuant to the terms of the merger agreement, Realty Income may also seek to sell some or all of the combined companies' office properties, subject to certain restrictions. In addition, Realty Income may elect to retain some or all of the companies' office properties following the closing of the merger. As such, the pro forma information described above is subject to change.

**Leadership and Governance**

Realty Income will continue to be led by President and Chief Executive Officer Sumit Roy and its existing senior management team. Michael D. McKee will remain Realty Income's Non-Executive Chairman of the Board of Directors. Upon closing, two VEREIT directors will be appointed to the Realty Income board.

**Timing and Approval**

The merger is subject to customary closing conditions, including the approval of both Realty Income and VEREIT shareholders, and is expected to close during the fourth quarter of 2021. The boards of directors of both companies have unanimously approved the transaction.

**Advisors**

Moelis & Company LLC is serving as lead financial advisor, Wells Fargo Securities is serving as financial advisor, and Latham & Watkins LLP is acting as legal advisor to Realty Income. J.P. Morgan Securities LLC is serving as exclusive financial advisor and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to VEREIT.

9

**Webcast and Conference Call Information**

Realty Income and VEREIT will conduct a joint conference call for investors and analysts on April 29, 2021 at 8:00 am ET to discuss the transaction.

To access the conference call, please register using the following link:

https://www.incommglobalevents.com/registration/client/7516/investor-call/

A live webcast will be available in listen-only mode by clicking on the webcast link on Realty Income or VEREIT's home page or in the investors section at www.realtyincome.com or www.vereit.com. A replay of the conference call webcast will be available approximately one hour after the conclusion of the live broadcast. No access code is required for this replay.

**Investor Presentation**

An investor presentation regarding the transaction will be available in the investors section of each company's website.

**About Realty Income**

Realty Income, The Monthly Dividend Company ®, is an S&P 500 company dedicated to providing stockholders with dependable monthly income. The company is structured as a REIT, and its monthly dividends are supported by the cash flow from over 6,500 real estate properties owned under long-term lease agreements with commercial clients. To date, the company has declared 610 consecutive common stock monthly dividends throughout its 52-year operating history and increased the dividend 110 times since Realty Income's public listing in 1994 (NYSE: O). The company is a member of the S&P 500 Dividend Aristocrats ® index. Additional information about the company can be obtained from the corporate website at www.realtyincome.com.

**About VEREIT**

VEREIT is a full-service real estate operating company which owns and manages one of the largest portfolios of single tenant commercial properties in the U.S. The Company has total real estate investments of $14.6 billion including approximately 3,800 properties and 89.5 million square feet. VEREIT's business model provides equity capital to creditworthy corporations in return for long-term leases on their properties. VEREIT is a publicly traded Maryland corporation listed on the New York Stock Exchange. VEREIT uses, and intends to continue to use, its Investor Relations website, which can be found at www.VEREIT.com, as a means of disclosing material nonpublic information and for complying with its disclosure obligations under Regulation FD. Additional information about VEREIT can be found through social media platforms such as Twitter and LinkedIn.

**II.      The Proxy Omits Material Information**

26.      Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to VEREIT's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy misrepresents and/or omits material information that is necessary for VEREIT's shareholders to make an informed decision in connection with the Proposed Merger.

A.      <u>The Misleadingly Incomplete Financial Projections</u>

27.      The Proxy omits material information regarding the financial projections for VEREIT and Realty Income and relied upon by J.P. Morgan in its analysis, including unlevered free cash flows and the definition of unlevered free cash flows and all underlying line items.  The Proxy also fails to disclose the line items underlying Cash Net Operating Income ("Cash NOI") and AFFO over the projection period for each of the VEREIT Standalone Projections and the Realty Income Adjusted Standalone Projections.  Proxy at 76 and 77.

28.      The projections served as a primary reason for the Board to approve the Proposed Merger and for J.P. Morgan to find the exchange ratio "fair" to VEREIT shareholders. The information is plainly material and speaks squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Merger: Is the Merger Consideration more or less valuable than a full stake in the standalone company? Without the material information regarding the projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger. Thus, the omitted information is plainly material to shareholders and must be disclosed.

29.     With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by J.P. Morgan and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of VEREIT's value and financial picture in the Proxy misleadingly incomplete.

B.     The Misleadingly Incomplete Summary of J.P. Morgan's Valuation Analyses

30.     The Proxy describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion.   Defendants concede the materiality of this information by including J.P. Morgan's fairness opinion and its valuation analyses among the factors considered in recommending the Proposed Merger. Proxy at 55.  However, the summary of J.P. Morgan's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, VEREIT shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to VEREIT's shareholders.

31.     In summarizing J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed in the analysis.

32.     The summary of J.P. Morgan's *Discounted Cash Flow Analysis* for VEREIT and Realty Income is also deficient.  The Proxy fails to disclose: (i) the unlevered free cash flow for fiscal years 2021 through 2023, (ii) the unlevered terminal free cash flows for VEREIT and Realty Income, (iii) the terminal values for VEREIT and Realty Income, (iv) the inputs and assumptions

underlying the discount rates ranging from 6.5% to 7.0% for VEREIT, and 5.875% to 6.375% for Realty Income, and (v) the net debt for VEREIT and Realty Income.

33.     These material omissions render the summary of the valuation analyses included in the Proxy misleadingly incomplete.

        C.     <u>Potential Conflicts of Interest</u>

34.     The Proxy also fails to disclose material information concerning potential conflicts of interest faced by VEREIT insiders.   The Proxy states that "following the consummation of the Mergers, the Realty Income board of directors is expected to have twelve members, with Mr. Michael D. McKee as the non-executive chairman of the Realty Income board of directors and two directors who served as directors on the VEREIT board of directors prior to the Merger Effective Time."  Proxy at 77.  However, the Proxy fails to specify the timing and nature of the negotiations leading to these determinations. Such information is important to shareholders because negotiating for continued employment and Board seats is a conflict of interest that could cause the Individual Defendants to value their own continued involvement in the Company over the value offered to shareholders. Accordingly, the omission and/or partial disclosure of this information renders the summary provided in the Proxy misleadingly incomplete.

35.     Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**<u>COUNT I</u>**
**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

40.     Defendants have issued the Proxy with the intention of soliciting VEREIT's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, among other things: (i) financial projections for VEREIT and Realty Income, (ii) J.P. Morgan's valuation analyses performed in support of its fairness opinion, and (iii) potential conflicts of interest facing VEREIT insiders.

41.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants

were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Proxy, but failed to obtain and disclose such information to VEREIT's shareholders, though they could have done so without extraordinary effort.

42.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company and signatories to the Proxy, the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that J.P. Morgan reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by J.P. Morgan, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be misleadingly incomplete.  Indeed, the Individual Defendants were required to review J.P. Morgan's analyses in connection with their receipt of the fairness opinion, question J.P. Morgan as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The

Individual Defendants were negligent in: (i) their decision to omit material information from the Proxy; or (ii) their failure to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as VEREIT's officers and directors.

44.     VEREIT is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Proxy.

45.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of VEREIT's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of VEREIT within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of VEREIT, and participation in and/or awareness of VEREIT's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of VEREIT, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants, as a signatory to the Proxy, was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to

be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of VEREIT, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Board to approve the Proposed Merger.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 16, 2021                              **MONTEVERDE & ASSOCIATES PC**

                                               */s/ Juan E. Monteverde*
                                               Juan E. Monteverde (JM-8169)
                                               The Empire State Building
                                               350 Fifth Avenue, Suite 4405
                                               New York, NY 10118
                                               Tel: (212) 971-1341
                                               Fax: (212) 202-7880
                                               Email: jmonteverde@monteverdelaw.com

                                               *Attorneys for Plaintiff*